# IN THE COURT OF APPEALS OF IOWA

No. 14-0100
Filed March 26, 2014

IN THE INTEREST OF J.C. AND D.H.,
Minor Children,

S.M., Mother,
Appellant,

T.H., Father,
Appellant.

_____

Appeal from the Iowa District Court for Warren County, Richard B. Clogg,

Judge.


A mother of two children and the father of one of the children appeal the

termination of their parental rights. **AFFIRMED IN PART AND REVERSED IN**

**PART.**


Jeremy M. Evans of Sporer & Flanagan, P.L.L.C., Des Moines, for
appellant mother.

Justin T. Rogers of Rogers Law Firm, P.L.L.C., Des Moines, for appellant
father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant
Attorney General, John Criswell, County Attorney, and Tracie Sehnert, Assistant
County Attorney, for appellee State.

Joseph Vogel, Des Moines, attorney and guardian ad litem for minor
children.


Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ. Vogel,
J., takes no part.

**VAITHESWARAN, J.**

A mother of two children,[1] born in 2001 and 2008, and the father of one of the children appeal the termination of their parental rights. Both parents challenge the evidence supporting the grounds for termination cited by the district court and contend termination was not in the children's best interests.

## I. Mother

The twenty-nine-year-old mother began consuming alcohol when she was twelve years old. In time, her usage increased significantly and was marked by periodic seven-to-ten day binges and accompanying blackouts.

The department of human services first became involved with the family in 2007. Over the years, the department afforded the mother numerous services to address her addiction, at times with the children remaining in her care and at other times with the children removed from her care. The mother consistently relapsed. Each time, the mother's relatives willingly took in the children. Following the two most recent removals, the children were placed with the older child's paternal grandmother. The older child wished to remain with the grandmother.

In light of the mother's relapses, the State petitioned to terminate her parental rights. At a hearing on the petition, the mother acknowledged that, despite her participation in multiple in-patient and out-patient treatment programs, she was not in a position to have the children immediately returned to her care. She variously stated, "I do not think I am ready," "I am not ready for

---

[1] The mother has a third child who is not a subject of this appeal. The father of the younger child has not appealed the termination of his parental rights.

them to live with me," and "I do not think it would be wise [to have them returned] right now." Although she testified she had not consumed alcohol for approximately four months, she said she did not believe she was sober enough to have her children come home that day. When asked why, she responded, "I would like to be more secure in my sobriety before that happens." When asked what action she wanted the court to take, she responded, "[N]ot to terminate my rights so that maybe a year from now when I am stable for a little while, at least a year, I could—be a full-time mom again." Later, she clarified that she was not asking for additional time to facilitate reunification but was seeking the preservation of her parental rights subject to having the grandmother serve as the children's guardian. She also clarified that her older child could remain with his grandmother, as he wished.

On our de novo review, we conclude the State proved at least one of the grounds for termination cited by the district court. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999) (setting forth the standard of review and stating we may affirm if we find clear and convincing evidence to support any of the grounds cited by the district court); *see also* Iowa Code § 232.116(1)(f) (2013) (requiring proof of several elements, including proof that children cannot be returned to parent's custody).

The mother also contends termination is not in the children's best interests because their bonds with her side of the family would be severed. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The record reveals that the children previously had a relationship with the mother's sister, but that relationship was tumultuous. There is scant if any additional evidence of ties with other members of the

mother's family. Based on this record, we are persuaded that termination of the mother's parental rights was in the children's best interests.

## II. Father

The district court terminated the parental rights of the older child's father pursuant to Iowa Code sections 232.116(1)(d), (e), (f), and (i). The father contends the State failed to prove these grounds for termination. On our de novo review, we agree. *See S.R.*, 600 N.W.2d at 64.

Iowa Code section 232.116(1)(d) requires proof that the child was previously adjudicated in need of assistance and "[s]ubsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services." This provision obligates the State to make reasonable efforts towards reunification of parent with child. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

Virtually all the department's reunification efforts were directed at the mother. The only "service" the department offered the father was a request to have him provide a urine sample for drug testing. That request was made despite the absence of any evidence of substance abuse or any assertion that the father's parenting skills were inadequate. The father did not provide the sample, and the department made no further reunification efforts.

At the termination hearing, the department social worker overseeing the case turned the State's burden of proof on its head, testifying the father "has not really proven that [the child] does not need protected from him." She continued,

I think . . . the first thing he could have done differently was really right at the beginning when the children were initially removed to drop a [urine test]. If his [test] was clean things would have progressed in one . . . manner . . . . [I]f it was dirty, then we would have a whole other set of issues to deal with and we would have had a path to proceed down. But we never got to that point.

Needless to say, the father had no obligation to prove his parental fitness. The obligation to prove he lacked fitness rested squarely on the State's shoulders. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The State failed to present clear and convincing evidence that the father either was in need of services to correct the circumstances leading to the child's adjudication or that he was afforded those services. *See* Iowa Code § 232.116(1)(d).

Section 232.116(1)(e) requires proof of several elements, including proof that "the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so."

"Significant and meaningful contact"

includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

*Id.* § 232.116(1)(e)(3). The absence of significant and meaningful contact was not proven.

The older child's grandmother testified that the child saw his father "probably once a week." She stated, "[H]e calls his dad. His dad comes over. He—loves his dad. He does not want his dad's right terminated in no way,

shape, or form." She said it was "[v]ery important" to the child that the father's parental rights stay intact.

The father confirmed he had been seeing the child every weekend for the previous four years, either at his parents' home or at his own home. He testified that he jointly cared for the child for the first three years of the child's life, after which the mother left the state for approximately two years. On her return, the father filed a petition seeking custody of the child. He was denied physical care because of his job as an over-the-road truck driver. Pursuant to the decree, he exercised every-other-weekend visitation for "[q]uite a while" before transitioning to weekly visits. There is nothing to suggest he abdicated the role of non-custodial parent. Indeed, the department social worker acknowledged that the father "had been seeing [the child] pretty regularly." She also agreed the child wanted "a relationship with his father" and shared a bond with him.

The State insisted this was not enough. In it's view, the father should have stepped forward to seek custody of the child during the child-in-need-of-assistance proceeding. Again, the burden was not on the father to prove significant and meaningful contact. The burden rested with the State to prove its absence, and the State failed to establish this element.

The State also impermissibly cited an adoption subsidy that the grandmother stood to receive if the father's rights were terminated. *See In re C. & K.*, 322 N.W.2d 76, 81 (Iowa 1982) ("We have said economic and cultural advantages elsewhere do not tip the balance from the home of natural parents in favor of someone else."). The grandmother said she was unaware of the subsidy until the termination hearing. It was clearly not a factor in her willingness to

adopt the children if both parents' rights were terminated. But the grandmother stood firm in her belief that the child's relationship with the father should not be terminated. The father, in turn, said he was more than willing to have his monthly child support withholdings go to his mother if the child remained in her care. Based on this record, we conclude economic benefits did not favor termination of the father's parental rights.

Section 232.116(1)(f) requires proof of several elements, including proof that the child "cannot be returned to the custody of the . . . parents." The father expressed a willingness to have his child placed in his custody immediately. He noted that he had a full-time job that allowed him to support the child and was living in a home that would accommodate him. The only evidence the State mustered to counter these assertions was the outdated criminal history of the father's girlfriend. This evidence was insufficient to prove this ground for termination.

We are left with section 232.116(1)(i), which requires proof of several elements, including proof that "the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time." As discussed, the department did not identify conditions that needed to be corrected with respect to this father and, for all practical purposes, did not offer services. This ground for termination was not satisfied.

We conclude the State failed to prove any of the grounds for termination cited by the district court. Accordingly, we reverse the termination decision as it relates to this father. In light of our conclusion that the grounds were not proven,

we find it unnecessary to address the best interests argument raised by the father.

### III. Disposition

We affirm the termination decision as to the mother. We reverse the termination decision as to the father.

**AFFIRMED IN PART AND REVERSED IN PART.**